UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

SEAN PATRICK MICKLIN,

    Petitioner,

v.

UNITED STATES OF AMERICA,

    Respondent.
_____/

Case No. 1:06-CV-593
(Criminal Case No. 1:02-CR-51)

HON. GORDON J. QUIST

## **OPINION**

This Court has before it Sean Patrick Micklin's ("Petitioner") Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody. After reviewing the pleadings and affidavits, the Court concludes that Petitioner is not entitled to relief.

    **1.**    **Facts of the Case**

Michigan state authorities began an investigation into Petitioner's manufacturing of 3,4-Methylenedioxy Methamphetamine ("MDMA" or "ecstasy") in October 2000, when it was discovered that he was ordering chemicals from various supply houses around the country. The Kalamazoo Valley Enforcement Team ("KVET") contacted a local package service, Mailboxes, Etc., and requested that Mailboxes, Etc. notify KVET if Petitioner shipped a package. On August 1, 2001, a Mailboxes, Etc. employee notified KVET that Petitioner had mailed a package that day. KVET went to the store and subjected the package sent by Petitioner to a canine sniff by a narcotics detection dog. The details of the canine sniff are set forth in an Affidavit for a Search Warrant by David Boysen, dated August 1, 2001 ("Search Warrant Aff."):

    B.    That on 08-01-01 The Kalamazoo Valley Enforcement Team (KVET), working in conjunction with United Parcel Service Security, conducted a

      random package inspection. PSO Rodriguez and his K-9 partner, ODIE, assisted in this package inspection.

C.     K-9 ODIE is a 7 year old Golden Lab. K-9 ODIE and Officer Rodriguez are currently certified as a team from the United States Police K-9 Association (USPCA) and from the North American Police Work Dog Association (NAPWDA). K-9 ODIE and Officer Rodriguez are certified in the detection of illegal substances, which include marijuana, cocaine, methamphetamine and heroine. K-9 ODIE and Officer Rodriguez have been assigned and have worked together in the capacity as a K-9 Team for the past 1 ½ years. Their duties are to detect illegal controlled substances. K-9 ODIE and Officer Rodriguez train often in the detection of illegal controlled substances. K-9 ODIE and Officer Rodriguez have been used together as a team in over 85 searches for illegal controlled substances.

D.     PSO Rodriguez and K-9 ODIE began their inspection of approximately 4 or 5 packages. During the inspection, PSO Rodriguez requested that the packages be placed into a straight line, approximately 4-6" apart from each other. PSO Rodriguez then directed his K-9 partner to search for illegal substances contained within the packages.

E.     During the aforementioned search, K-9 ODIE alerted and gave a positive indication on a package that was in the middle of the line of packages.

F.     PSO Rodriguez then gave K-9 ODIE the command to search the line of packages again. At this time, K-9 ODIE again alerted on the previously mentioned package. This positive alert is an indication to PSO Rodriguez

>that K-9 ODIE has detected the scent of a illegal substance contained within the package. The package which K-9 ODIE alerted to is described as a plain brown cardboard box measuring approximately 6" x 6" x 6" bearing United Parcel Service tracking number 1Z4E75801378017573.

A search warrant was issued and, after inspecting the package, authorities discovered a pill bottle of capsules containing white powder later determined to be 3,4-Methylenedioxy Amphetamine ("MDA").

A search of Petitioner's home pursuant to a warrant was conducted the same day. Authorities found 6.1 grams of powder MDMA, 25,000 empty capsules, a number of documents relating to the manufacture of ecstasy (including drug recipes and articles), as well as computer records detailing multiple purchases of chemicals and laboratory equipment. Although Petitioner arrived home during the search, he was not arrested.

After the search ended, Petitioner immediately left his home and went to his drug laboratory, located elsewhere. He proceeded to dismantle the laboratory in the middle of the night and then took the chemicals and equipment to a dumpster at the Texas Township Park located near his mother's house, where he proceeded to dispose of the materials. Early the next morning, officers responded to a call from a park maintenance worker who had discovered the dumped materials. Many of the items contained information identifying Petitioner as their owner. The authorities later used the computer records and results of subpoenas to chemical and laboratory equipment manufacturers to establish the history of chemicals and equipment purchased by Petitioner to manufacture MDMA and MDA. A six-count indictment was issued on February 28, 2002, the charges of which all centered around Micklin's alleged drug manufacturing of MDMA and MDA.

    2.      **Procedural History.**

On April 24, 2002, Petitioner pled guilty to: Count 1 - Attempted Manufacture of 3,4-Methylenedioxy Methamphetamine (MDMA/"Ecstasy"); Count 2 - Manufacture of 3,4-Methylenedioxy Amphetamine (MDA); Count 3 - Attempted Distribution of MDA; and Count 5 - Possession of Items with Knowledge that Items will be Used to Manufacture a Controlled Substance. On July 18, 2002, this Court sentenced Petitioner to a term of 144 months incarceration on each of Counts One, Two and Three, and a term of 48 months incarceration on Count 5, to be served concurrently.

Petitioner appealed his sentence to the United States Court of Appeals for the Sixth Circuit, which affirmed this Court's judgment on February 19, 2004. *See United States v. Micklin*, No. 02-1976, WL 326234, No. 02-1976 (6th Cir. Feb. 19, 2004). Petitioner filed a petition for writ of certiorari with the United States Supreme Court. On January 25, 2005, the Supreme Court granted the writ, vacated the decision of the Court of Appeals for the Sixth Circuit and remanded the case to the Sixth Circuit in light of *United States v. Booker*, 125 S. Ct. 738, 543 U.S. 220 (2005). On June 7, 2005, the Sixth Circuit remanded the case to this district court for resentencing. *See United States v. Micklin*, No. 02-1976 (6th Cir. June 7, 2005). On November 2, 2005, this Court resentenced Petitioner to a term of 124 months incarceration on each of Counts One, Two and Three, and a term of 48 months incarceration on Count 5, to be served concurrently.

On August 17, 2006, Petitioner filed this motion under 28 U.S.C. § 2255, alleging that his counsel was ineffective for failing to file a motion to suppress. On January 18, 2007, as ordered by the Court, the United States filed a Response to Petitioner's motion. On January 29, 2007, Petitioner filed a Motion for an Extension of Time to File a Reply. This motion was granted on February 8, 2007, and the Court ordered Petitioner to file his Reply by March 9, 2007 (docket no. 19). Petitioner failed to file a timely Reply. Rather, on February 23, 2007, Petitioner filed a Motion for Leave to

4

Take Discovery (docket no. 21) and a Second Motion for an Extension of Time to File a Reply (docket no. 20).

### 3.    Motion for Discovery and Extension of Time to File a Reply are Denied

Petitioner does not have an automatic right to discovery. *See Williams v. Bagley*, 380 F.3d 932, 974 (6th Cir. 2004); *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001). Rather, under Rule 6 of the Rules Governing 2255 Proceedings, a party in a § 2255 case must seek leave of court before serving discovery on the opposing party, and the Court may grant the request only "for good cause." Here, the Court finds that there is no good cause to grant the request. The parties have submitted affidavits and briefs that set forth their respective positions. The Court does not believe that any additional information will assist the Court in making its determination. Therefore, Petitioner's Motion for Leave to Take Discovery will be denied.

Further, the Court already gave Petitioner sufficient time to file a Reply. It was his decision not to do so, in the apparent hope that his Motion for Leave to Take Discovery would be granted. Such is not the case, and Petitioner missed his opportunity. Therefore, his Second Motion for an Extension of Time to File a Reply will be denied.

### 4.    Ineffective Assistance of Counsel Claim is Dismissed

Petitioner alleges that his attorney should have filed a motion to suppress the package searched at Mailboxes, Etc. because the narcotics detection dog was not specially trained to detect MDA or MDMA. Therefore, he alleges, the canine sniff was unreliable and was not sufficient to establish probable cause for the search of the package.

The test for establishing ineffective assistance of counsel for failure to file a motion to suppress evidence is set forth in *Kimmelman v. Morrison*, 477 U.S. 365, 106 S. Ct. 2574 (1986):

> The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was

5

> rendered unfair and the verdict rendered suspect. *See, e.g., Strickland v. Washington*, 466 U.S., at 686, 104 S.Ct., at 2064; *United States v. Cronic*, 466 U.S. 648, 655-657, 104 S.Ct. 2039, 2044-2046, 80 L.Ed.2d 657 (1984). In order to prevail, the defendant must show both that counsel's representation fell below an objective standard of reasonableness, *Strickland*, 466 U.S., at 688, 104 S.Ct., at 2064, and that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.*, at 694, 104 S.Ct., at 2068. Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice. Thus, while respondent's defaulted Fourth Amendment claim is one element of proof of his Sixth Amendment claim, the two claims have separate identities and reflect different constitutional values.
>
> * * * *
>
> In order to establish ineffective representation, the defendant must prove both incompetence and prejudice. 466 U.S., at 688, 104 S.Ct., at 2065. There is a strong presumption that counsel's performance falls within the "wide range of professional assistance," *id.*, at 689, 104 S.Ct., at 2065; the defendant bears the burden of proving that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy. *Id.*, at 688-689, 104 S.Ct., at 2064-2065. The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential. *Id.*, at 689, 104 S.Ct., at 2065. The defendant shows that he was prejudiced by his attorney's ineffectiveness by demonstrating that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*, at 694, 104 S.Ct., at 2068. *See also, id.*, at 695, 104 S.Ct., at 2069 (Where a defendant challenges his conviction, he must show that there exists "a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt"). And, in determining the existence vel non of prejudice, the court "must consider the totality of the evidence before the judge or jury." *Ibid.*
>
> As is obvious, *Strickland's* standard, although by no means insurmountable, is highly demanding. More importantly, it differs significantly from the elements of proof applicable to a straightforward Fourth Amendment claim. Although a meritorious Fourth Amendment issue is necessary to the success of a Sixth Amendment claim like respondent's, a good Fourth Amendment claim alone will not earn a prisoner federal habeas relief. Only those habeas petitioners who can prove under *Strickland* that they have been denied a fair trial by the gross incompetence of their attorneys will be granted the writ and will be entitled to retrial without the challenged evidence.

*Kimmelman,* 477 U.S. at 374-375, 381; 106 S. Ct. at 2582-83, 2586.

Here, Petitioner has failed to establish that his counsel's representation fell below an objective standard of reasonableness, or that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. In this situation, it was not unreasonable for his counsel to decide not the file a motion to suppress. Based on case law that existed at the time that Petitioner pled guilty in April, 2002, it was reasonable for counsel to believe that a motion to suppress the package would have been unsuccessful and would not alter the outcome of the case.

The actual canine sniff by the narcotics detection dog is not considered a "search" within the meaning of the Fourth Amendment. *Illinois v. Caballes*, 543 U.S. 405, 408-09, 125 S. Ct. 834, 837-38 (2005); *United States v. Place*, 462 U.S. 696, 707, 103 S. Ct. 2637, 2644-45 (1983). Therefore, the canine sniff itself was not unlawful. The real issue is whether the authorities could reasonably rely on the canine sniff for establishing probable cause to obtain a search warrant to search the package. The court concludes that they could.

The Sixth Circuit has held that "(a) positive indication by a properly-trained dog is sufficient to establish probable cause for the presence of a controlled substance." *United States v. Diaz*, 25 F.3d 392, 393-94 (6th Cir. 1994). To support such a probable cause determination, "the training and reliability of the dog must be established." *Id.* at 394. Although decided after Petitioner pled guilty, a 2004 case has held that an officer may rely on a canine sniff to establish probable cause for a search warrant if the dog has been generally certified as a drug detection dog:

> Indeed, it would be particularly inappropriate to insist that a mini-trial be held on a drug dog's training and performance before a law enforcement officer could cite a positive alert as a basis for obtaining a warrant. Even if such a hearing might raise some doubt about the reliability of a particular alert, an officer surely is entitled to rely in good faith upon the existence of probable cause as determined by a neutral magistrate, *see United States v. Leon*, 468 U.S. 897, 926, 104 S. Ct. 3405, 3422, 82 L.Ed.2d 677 (1984), so long as the dog in question has been generally certified as a drug detection dog.

*United States v. Robinson,* 390 F.3d 853, 875 (6th Cir. 2004).

7

Here, K-9 ODIE and Officer Rodriguez were certified as a team from the United States Police K-9 Association and from the North American Police Work Dog Association. (Search Warrant Aff. ¶ C; Buffenbarger Aff. ¶ ¶ 3, 4.) They were certified in the detection of illegal substances, including marijuana, cocaine, methamphetemine, and heroine. *Id.* They also had worked together for 1 ½ years and had been used together as a team in over 85 searches for illegal controlled substances. It was reasonable for the KVET to rely on the canine sniff for probable cause to search the package.

Petitioner alleges that the canine sniff was not reliable because K-9 ODIE was not specially trained in the detection of MDA or MDMA. First, Petitioner provides no evidence for this allegation. Second, even if this allegation is true, K-9 ODIE may have alerted to another residual substance on the package. For example, Petitioner was also charged with the manufacture of marijuana, and the dog may have detected that odor on the cardboard packaging. *See United States v. Johnson*, 660 F.2d 21, 23 (2d Cir. 1981) (rejecting appellant's argument that probable cause is not established when a dog alerts on only the residual odors of a drug). Third, as stated by Marty Buffenbarger, a Sergeant assigned to the KVET, "[b]ecause MDA is 3,4-methylenedioxy-n-amphetamine, it is closely related to amphetamine and subject to detection by a trained canine." (Buffenbarger Aff. ¶ 4.)

Finally, the KVET had no way of knowing what was inside the package and they were reasonable in believing that it contained an illegal substance based on the fact that K-9 ODIE alerted to the package. *See United States v. Outlaw*, 319 F.3d 701, 704 (5th Cir. 2003) (the fact that the dog alerted to PCD, a drug that the dog was not trained to detect, did not vitiate the agent's reasonable suspicion, where the dog had successfully completed all standard training and was certified to detect a variety of narcotics); *United States v. Viera*, 644 F.2d 509, 511-12 (5th Cir.

8

1981) (there was probable cause to support a search warrant even though narcotics detection dogs were not trained to detect quaaludes); *United States v. McCranie*, 703 F.2d 1213, 1218 (10th Cir. 1983) (holding that an alert by an explosive-sniffing dog not formally trained to detect drugs nonetheless created reasonable suspicion that the defendant's suitcase contained contraband).

Petitioner's counsel "thoroughly discussed the issue of this search warrant" with Petitioner and recalls that "the overriding problem with any challenge to the search conducted at the mailing facility was that a successful challenge to that evidence would not have resulted in suppression of much of the evidence which was available to be used against Mr. Micklin." (Stroba Aff. ¶ 7.) Specifically, the evidence of the drug laboratory equipment, that was found in the park dumpster and was linked to the Petitioner, could still be admitted.

In conclusion, Petitioner's counsel's representation did not fall below an objective standard of reasonableness. There was good reason to believe that the motion to suppress would be denied, and even if it was granted, other incriminating evidence could still be admitted. Therefore, Petitioner's counsel was not ineffective and Petitioner's § 2255 motion will be denied.

     **5.**     **No Certificate of Appealability**.

Under 28 U.S.C. § 2253(c)(2), the Court must also determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473, 120 S. Ct. 1595 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, 120 S. Ct. at 1604, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  The Court finds that reasonable jurists could not find that this Court's dismissal of Petitioner's claim was debatable or wrong.  Therefore, the Court will deny Petitioner a certificate of appealability.

## Conclusion

For these reasons, Petitioner's Motion for Leave to Take Discovery (docket no. 21) and Second Motion for an Extension of Time to File a Reply (docket no. 20) will be DENIED.  Petitioner's § 2255 Motion (docket no. 1) will be DENIED.  In addition, a certificate of appealability will be DENIED as to each issue raised by Petitioner because he has failed to make a "substantial showing of a denial of a constitutional right."

A separate order will issue.


Dated:  April 12, 2007                                  /s/ Gordon J. Quist
                                                GORDON J. QUIST
                                        UNITED STATES DISTRICT JUDGE